**Russell W. BURGESS and William Donald Jackson, Jr., Plaintiffs,**

v.

**CATAWBA COUNTY, Defendant.**

No. ST–C–90–11.

United States District Court,
W.D. North Carolina,
Statesville Division.

Nov. 2, 1992.

M. Travis Payne, Edelstein & Payne, Raleigh, N.C., for plaintiffs.

W. Gene Sigmon, Sigmon, Sigmon & Isenhower, Carolyn Crouch, Newton, N.C., for defendant.

## ORDER

MULLEN, District Judge.

This matter is before the Court upon (1) Defendant's motion for summary judgment, (2) Plaintiffs' motion for partial summary judgment, and (3) Plaintiffs' motion to strike Defendant's motion for summary judgment. This Order applies only to Plaintiff Jackson, as additional discovery is being conducted by Plaintiff Burgess relating to an issue of exemption.

## STATEMENT OF FACTS

This action was originally brought by 28 emergency medical service ("EMS") personnel employed by Catawba County to enforce their right to overtime guaranteed by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Presently, only two Plaintiffs remain, the others having settled with the County. Plaintiff Jackson alleges that the Defendant engaged in willful violations of the FLSA, by failing to pay him overtime wages due, including time and a half for all hours worked in excess of 40 hours per week. The Plaintiff seeks compensatory damages for unpaid overtime, liquidated damages in an amount equal to the compensatory damages, as well as injunctive and declaratory relief.

During the relevant times, the Plaintiff's work shifts consisted of 24 hours on-duty followed by 48 hours off-duty. Prior to August of 1985, Plaintiff was paid a salary that covered all of his regularly scheduled hours of work, including sleep and meal time. Overtime hours occurred only if an emergency call came in at the end of a shift or if an employee had to work an extra shift due to the absence of another employee. Employees were paid on a "straight time" hourly wage for overtime, which was calculated by dividing the total number of regularly scheduled hours in a year, 2928 hours, into the annual salary of the particular employee. Prior to August of 1985, time sheets showing hours worked were

not kept by the employees unless the employee worked overtime hours. During the 24 hour on-duty shifts, Plaintiff was expected to be prepared for emergency medical calls at all times, including during sleep and meal periods.

After the County became aware of *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), *reh'g denied*, 471 U.S. 1049, 105 S.Ct. 2041, 85 L.Ed.2d 340 (1985), in which the Supreme Court held that the FLSA is applicable to state and local public employers, the Defendant instituted new methods of calculating hours of work and pay, including the "fluctuating workweek" method of overtime calculation as well as the deduction of sleep and meal time from the hours worked by the Plaintiff. In July of 1985, the Defendant held a series of three meetings with EMS employees at which these new methods were explained. Employees were told that they would have to begin filling out time sheets and deducting eight hours per shift for sleep time and an hour and a half for meal time. If interruptions in sleep prevented the employees from getting at least five hours of sleep, then all sleep time was counted as hours worked. Likewise, Plaintiff was allowed to show interruptions in meals as hours worked. Another new method instituted by the County was the "fluctuating workweek" method of calculating overtime. The time sheets, deduction of sleep and meal time, and the "fluctuating workweek" method of overtime calculation were implemented by the County in August of 1985. When Congress passed the FLSA Amendments in November of 1985, the County reverted back to its old method of compensation and ceased requiring EMS employees to fill out time sheets. In April of 1986, the County again returned to the deduction of sleep and meal time, the "fluctuating workweek", and the filling out of time sheets. These methods continued in effect until August of 1989. In addition, from 1985 through August of 1989, the Defendant counted leave time as hours worked for all County employees when calculating overtime pay.

Also in April of 1986, the County began giving EMS employees the option of receiving compensatory time in lieu of pay for overtime hours worked. Compensatory time, however, could only be received at "half time" for all hours between 40 and 60 in any workweek. Both the County Code and the 1985 FLSA Amendments required that if compensatory time were being used in lieu of pay for overtime, it must be given at a rate of time and a half.

In August of 1989, the Defendant ceased the deduction of sleep and meal time and the use of the "fluctuating workweek" and began treating the Plaintiff as "law enforcement personnel" under the partial exemption from overtime found in 29 U.S.C. § 207(k). This section provides a partial exemption to the overtime provisions of the FLSA and only applies to those employees whose duties are substantially related to firefighting or law enforcement activities. Law enforcement emergency calls amount to about 24% of the calls to which the EMS department responds. Fire calls amount to approximately 2% of the calls. The remainder of the emergency calls, more than 70%, are strictly medical calls.

In its answer, the Defendant asserted that any back pay awarded should be offset to reflect compensated leave time (sick leave, holidays, and vacation leave). The Plaintiff responded by amending the complaint to assert that Defendant's refusal to include such leave time in the overtime calculation constituted discrimination in violation of 29 U.S.C. § 215(a)(3) and a violation of equal protection rights secured by the Fourteenth Amendment. Plaintiff also contends that the Defendant's conduct is willful, entitling the Plaintiff to relief under the three year statute of limitations. Further, Plaintiff asserts that liquidated damages in an amount equal to compensatory damages are appropriate in this case.

Defendant filed a motion for summary judgment on 19 November 1991. The Plaintiff has filed a motion for partial summary judgment as to all matters of liability, and a motion to strike the Defendant's motion for summary judgment. A hearing

was held on before the Court on 16 April 1992.

## CONCLUSIONS OF LAW

### I. DEDUCTION OF SLEEP AND MEAL TIME:

█ The deduction of uninterrupted sleep and meal time from hours worked where an employee is required to be on-duty 24 hours or more must be pursuant to an implied or express agreement. Otherwise, the time constitutes hours worked. 29 C.F.R. § 785.22(a) (1991). Plaintiff contends that there is no material issue of fact that there was never an express or implied agreement with Plaintiff to deduct sleep and meal time from hours worked.

█ An implied agreement to deduct sleep time cannot exist if the employee asserts reasonably contemporaneous verbal objections or protests to the employer's actions. *Johnson v. City of Columbia*, 949 F.2d 127 (4th Cir.1991); *Jacksonville Professional Fire Fighters Ass'n Local 2961 v. City of Jacksonville*, 685 F.Supp. 513 (E.D.N.C.1987); *Int'l Ass'n of Firefighters, Local 349 v. City of Rome*, 682 F.Supp. 522 (N.D.Ga.1988). The Defendant contends that an employee's continued employment and acceptance of pay is evidence of the employee's implied agreement, citing *Harrison v. City of Clarksville*, 732 F.Supp. 810, 815 (M.D.Tenn.1990). In light of clear Fourth Circuit law, however, this case carries no weight.

It is important to note that the Defendant bears the burden of establishing that an exception exists to the general provisions of the FLSA. *Johnson*, 949 F.2d at 130; *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 286 (4th Cir.1986). Thus, the Defendant must show that an agreement with the employees existed to deduct sleep and meal time. Defendant relies on two things to establish that an agreement existed. First, Defendant contends that the Catawba County Code sets forth the terms and conditions of employment of the Plaintiff, and that the Code provisions in effect when the Plaintiff was hired provided for the deduction of sleep and meal time from work time. Furthermore, the Defendant contends that prior to August of 1985, meal and sleep time were deducted as a practice. This contention, however, is not supported by the record. In fact, the Plaintiff has put forth uncontroverted evidence in the form of affidavits of Danny Harbinson, Manager of Emergency Medical Services for Catawba County, David Yount, Director of Protective Services for Catawba County, Sherwin Speight, Manager of EMS from 1982 through 1984, as well as other EMS employees, that no EMS employees were ever made aware of any Code provision dealing with deduction of sleep and meal time, and that EMS employees were paid a salary which covered all regularly scheduled hours of on-duty time, or 2928 hours per year. Furthermore, overtime was paid on a "straight time" basis calculated by dividing the salary by the number of hours worked in a year, 2928. Thus, Plaintiff has established that no code provisions dealing with the deduction of sleep or meal time were ever applied or implemented with respect to the Plaintiff at any time relevant to this action. Given the uncontroverted testimony that there was no deduction of sleep or meal time prior to 1985, and the evidence that prior to 1985 the EMS employees were paid a salary covering all regularly scheduled hours of work, including sleep and meal time, the provisions of the County Code cited by the Defendant do not support a conclusion that the Plaintiff had an agreement with the County that allowed for the deduction of sleep or meal time from his hours of work.

Defendant also relies on the series of three meetings held in July of 1985 as support for its contention that an implied agreement existed for the deduction of sleep and meal time from hours worked. At these three meetings the Defendant explained its intent to begin using the "fluctuating workweek" method of calculating overtime along with deduction of sleep and meal time. The Defendant claims that no objections were raised at that time nor within a reasonable time thereafter. In support of this factual assertion, Defendant cites to several depositions of County officials. Only one of these officials, Ms.

Gilliam, the personnel director in 1985, specifically denies that objections were expressed by the EMS employees at the meetings. Specifically, Ms. Gilliam testified that during the meetings, the employees were asked to voice any problems or complaints. According to Ms. Gilliam, no concerns were expressed about deducting sleep and meal time, only general questions about how the policies were going to be implemented. The Plaintiff, however, presents a great deal of evidence in the form of deposition testimony that there were numerous objections and protests by the EMS employees to the deductions both during and after the meetings in July of 1985 so as to preclude the finding of an implied agreement. The Plaintiff also points out that despite Ms. Gilliam's testimony, other County officials have admitted that there were in fact complaints among the employees. In particular, Mr. Harbinson, the Manager of EMS, admitted that the deduction of sleep and meal time continued to be a matter of considerable discussion among the employees following the July 1985 meetings. In fact, the concerns continued for two years and increased to the point such that by July of 1987, Harbinson felt the need to communicate those objections and concerns to his immediate supervisor, Mr. Yount, the Director of Protective Services, as well as to Ms. Gilliam. Even Ms. Gilliam's testimony establishes that the EMS employees questioned the legality of the deductions. At a meeting of the EMS staff with a representative of the Department of Labor on September 11, 1985, Ms. Gilliam admitted that the employees asked questions about the deductions of sleep and meal time in the nature of "[i]s this within the law or is the County trying to pull something over on us." In fact, there is testimony that County officials did not understand that employees could refuse to allow the deduction of sleep and meal time. Shae Stallings, one of the captains, stated that on a number of occasions he conveyed the complaints about sleep and meal time that had been made by his crew members to the EMS Manager, Mr. Harbinson, who responded that the deductions were nevertheless legal.

It appears to the Court that the Plaintiff has presented uncontroverted evidence that complaints about the deductions were expressed by the EMS employees. The testimony of Ms. Gilliam, the only evidence that no objections were presented at the meetings in July of 1985, has no weight in light of the abundant evidence presented by the Plaintiff that objections were expressed both during the meetings in July and throughout the period of time in which these deductions were taken. Taking Ms. Gilliam's testimony as true, even if the EMS employees did not express objections at the July meetings, there is uncontroverted evidence that concerns and objections were expressed after the meetings were held. The deductions were not implemented until August of 1985. The employees were not required to object at the July meetings to avoid an implied agreement to deduct sleep and meal time. So long as the objections were reasonably contemporaneous to the implementation of the deductions, which occurred in August of 1985, there is no implied agreement. Under these facts, the Defendant has not met its burden of establishing that an agreement existed. The Court finds that there is no genuine issue of material fact that an agreement did not exist to deduct sleep and meal time and thus, these deductions were in violation of the FLSA.

## II. DEDUCTION OF MEAL TIME:

Plaintiff contends that even if an agreement existed with the County to deduct meal times, they cannot be legally deducted, as EMS employees were never relieved from their duties during meals. Plaintiff's evidence in the form of time sheets of EMS employees establishes that meals were regularly interrupted by emergency calls and other duties. The regulation governing the deduction of meal time provides as follows:

*Bona Fide meal periods.* Bona fide meal periods are not worktime ... The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily, 30 minutes or more is long enough for a bona fide meal

period ... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a) (1991).

In *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir.1990), the court held that exclusion of meal periods from hours worked was prohibited where firefighters were subject to respond to emergency calls during their meals. The *Kohlheim* court, in interpreting the regulation cited above, stated that the important issue is whether employees are subject to real limitations on their freedom during meals which inure to the benefit of the employer. *Kohlheim*, 915 F.2d at 1477 n. 19. The court held that firefighters, being required to remain at the station and be ready to respond to emergency calls, were subject to significant affirmative responsibilities during meals. *Id.* at 1477. Further, these restrictions inure to the benefit of the county by ensuring the availability of a pool of competent firefighters for immediate response to emergency situations. *Id.*

Defendant has cited several older United States Claims Court cases which interpret the mealtime pay provisions of the Federal Employees Pay Act and hold that even if an employee is tied to a radio during lunch, as long as the employee has been relieved of substantial duties during meals, meal periods are not required to be compensated. The *Kohlheim* case, however, is much more persuasive authority, as it deals directly with the FLSA regulation that applies to the present case.

Plaintiff has presented evidence in the form of time sheets which show that meal times were regularly interrupted. Defendant has presented no evidence, however, showing rare or infrequent interruptions. Under the *Kohlheim* analysis, the Plaintiff was not relieved of substantial duties during meals, as he was subject to calls and was required to be prepared to respond. This inured to the benefit of the Defendant, as it was able to maintain a pool of EMS personnel prepared to respond to emergencies. Thus, there were no "bona fide meal periods" which could be deducted pursuant to any kind of agreement. As there exists no genuine issue of material fact that the Plaintiff was required to perform a duty, whether active or inactive, during meal times, summary judgment in favor of the Plaintiff on this issue is proper.

## III. FLUCTUATING WORKWEEK:

■ The "fluctuating workweek" method of overtime calculation, is explained in 29 C.F.R. § 778.114, which provides as follows:

(a) an employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for hours worked each workweek whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay ...

(c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to ensure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever the job may demand in a particular workweek and the employer

pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long work weeks as well as short ones under the circumstances of the employment as a whole ... On the other hand where all the facts indicate that an employee is being paid for his overtime at a rate no greater than that which he received for nonovertime hours, compliance with the Act cannot be rested on an application of the fluctuating workweek overtime formula.

29 C.F.R. § 778.114 (1991).

From the facts of this case, it appears to the Court that the "fluctuating workweek" method of overtime calculation implemented by the County does not meet the requirements of the regulations. Once again, since the "fluctuating workweek" is also an exception to the normal requirements of the FLSA, the Defendant bears the burden of establishing that it complied with the regulations. The Defendant has not met this burden.

First of all, the "weekly salary" of the Plaintiff was expressly meant to cover up to 60 hours worked in a week, not all hours worked in a week, whatever their number. Second, Plaintiff regularly received additional straight-time pay over and above his weekly salary when he worked extra hours due to a shift extension. This extra pay was not calculated on a "fluctuating" basis, but was a fixed amount calculated by dividing the total regularly scheduled hours in a year, 2928, into the employees' annual salary. In addition, the Plaintiff customarily works a fixed schedule of hours, consisting of 24 hours on-duty and 48 hours off-duty. His hours do not fluctuate from week to week unless overtime hours are worked.

Based on the facts, it is apparent that the "fluctuating workweek" formula was improperly applied to the Plaintiff. There is no evidence that there was a clear mutual understanding that the salary of the EMS employees covered any and all hours worked. *See Spires v. Ben Hill County,* 745 F.Supp. 690 (M.D.Ga.1990). Indeed, it is undisputed that the salary only covered up to 60 hours in a workweek. Further, extra hours worked due to a shift extension were compensated at a straight-time rate rather than a fluctuating rate. Since a clear mutual understanding between the parties that the salary covers all hours worked is a requirement for the application of the fluctuating workweek method of overtime calculation, and there is no issue of fact that there was no such mutual understanding, summary judgment in favor of the Plaintiff is appropriate on this issue of liability.

IV. PARTIAL EXEMPTION UNDER § 207(k):

█ Title 29 U.S.C. § 207(k) provides a partial overtime pay exemption for fire protection and law enforcement personnel. The exemption may apply to EMS employees, however, provided that certain tests are met.

Ambulance and rescue service employees ... may be treated as employees engaged in fire protection or law enforcement activities [within the meaning of 29 U.S.C. § 207(k)] if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.

29 C.F.R. § 553.215 (1991).

The Catawba County EMS employees were paid according to the standard for employees engaged in law enforcement activities. In addition to the "substantially related" requirement, in order for the § 207(k) exemption to apply, employees may not spend more than twenty percent of the total hours worked engaged in "nonexempt activities", that is, work which is not performed as incident to or in conjunction with

their fire protection or law enforcement activities. 29 C.F.R. § 553.212 (1991).

The Court will first address the twenty percent limitation on nonexempt work. If the Court finds that the EMS employees spend more than twenty percent of their time engaged in nonexempt activities, § 207(k) cannot be applied, regardless of whether the "substantially related" test is met. *Spires*, 745 F.Supp. at 700; *Horan v. King County, Wash.*, 740 F.Supp. 1471, 1479 (W.D.Wash.1990).

The evidence presented establishes that law enforcement calls amount to approximately 24% of the calls to which EMS employees respond, while fire calls only amount to 2% of the calls. It is undisputed that over 70% of the calls are neither fire nor law enforcement calls. The great majority of the calls were described as "straight medical calls where neither fire nor police would be dispatched." Thus, regardless of whether the EMS employees are engaged in activities "substantially related" to law enforcement, they undoubtedly spend more than twenty percent of their time engaged in non-exempt activities. Under these facts there is no issue of material fact that the § 207(k) exemption was improperly applied to the Plaintiff.

## V. USE OF COMPENSATORY TIME:

Beginning in 1986, Defendant allowed EMS employees to choose to receive either compensatory time or overtime pay. If the overtime occurred in a week in which a time sheet indicated hours worked between 40 and 60, compensatory time was received at a rate of a half hour per hour of overtime. The FLSA requires that if compensatory time is given in lieu of overtime pay, it must be given at a rate of not less than one and one-half hours for each hour of overtime. 29 U.S.C.A. § 207(*o*)(1) (West Supp.1992). The County's own code also expressly required this rate. Since this practice was patently illegal, Plaintiff requests that any compensatory time received by the Plaintiff be ignored by the Court and not counted in any way during any calculation of damages. Defendant offers nothing to controvert the Plaintiff's

evidence that compensatory time was given in a manner which violated the FLSA. Thus, it is clear that there is no genuine issue of material fact as to the illegality of the Defendant's use of compensatory time and that summary judgment in favor of the Plaintiff is proper with regard to this specific issue.

## VI. WILLFULNESS:

█ Plaintiff alleges that Defendant's actions in violating the FLSA were willful, and thus Plaintiff should be entitled to damages going back three years from the date of the filing of the complaint instead of the normal statute of limitations of two years under the FLSA. 29 U.S.C.A. § 255(a) (1985). Thus, Plaintiff wants back pay from 29 January 1987, rather than from 29 January 1988.

At one time, an employer's actions in violation of the FLSA could be deemed "willful" merely if the employer "knew or suspected that his actions might violate the FLSA," that is, if the employer knew that the FLSA was "in the picture". *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Under the *Jiffy June* standard, good faith on the part of the employer was not a defense to a finding of willfulness. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court rejected the *Jiffy June* standard, explaining that the word "willful" is synonymous with "voluntary", "deliberate", and "intentional". *McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 1681. The Court held that an employer acts willfully when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* Conduct that is merely unreasonable or negligent is not considered to be willful. *Id.*

While the Plaintiff has presented substantial evidence that the conduct of the Defendant may have demonstrated a reckless disregard for whether it was in violation of the FLSA, the Defendant has produced evidence that it reviewed the regulations and that it relied on the oral advice of

representatives from the Department of Labor in implementing its new pay policies. Applying the standard set out in *McLaughlin*, the Court finds that there is a genuine issue of material fact as to whether the conduct of the Defendant was willful.

## VII. LIQUIDATED DAMAGES:

■ The Court has determined that summary judgment in favor of the Plaintiff Jackson is appropriate on all issues of liability discussed thus far except whether the conduct of the defendant was willful. The FLSA provides that:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages.

29 U.S.C.A. § 216(b) (West Supp.1992). An award of liquidated damages is mandatory, but may become discretionary if an employer is able to establish "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C.A. § 260 (1985). If the employer is able to meet this requirement, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." *Id.* Thus, unlike the issue of willfulness, upon which the Plaintiff bears the burden of proof, when a court considers whether or not to award liquidated damages, the Defendant has the "plain and substantial burden" of proving that its actions were objectively reasonable and prompted solely by good faith. *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir.1960); *Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480, 489 (D.Md. 1982). If either of these two prongs cannot be met, the Court must award liquidated damages.

■ In *Horan v. King County, Wash.*, 740 F.Supp. 1471 (W.D.Wash.1990),

the court explained that good faith requires some duty to investigate potential liability under the FLSA. *Horan*, 740 F.Supp. at 1481. An employer who blindly operates without making an investigation to determine its responsibilities under the FLSA is not acting in good faith. *Id.* An employer cannot "simply remain blissfully ignorant of FLSA requirements." *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir.1984). Further, a failure to investigate when an employer has knowledge of circumstances that ought to have put it on notice that it was in violation of the FLSA constitutes a lack of good faith. *Horan*, 740 F.Supp. at 1482. In *Spires v. Ben Hill County*, 745 F.Supp. 690 (M.D.Ga.1990), the court determined that the Defendant county did not act in good faith so as to preclude liquidated damages, as the Defendant had failed to conduct an examination to determine whether it was in compliance with the FLSA until over a year after it became applicable, and then only did so after receiving complaints about the payment of overtime compensation. *Spires*, 745 F.Supp. at 708. The court also pointed out that although logs were available, the Defendant never examined them to determine how much time the EMT's spent responding to different types of calls. *Id.*

■ Given the evidence presented by the Plaintiff, it is clear that the conduct of the Defendant in the present case likewise cannot be considered to be undertaken in good faith. The Plaintiff has shown the following:

a) It is clearly stated in the regulations that an agreement is required to allow the deduction of sleep time. The County's position was that employees could not refuse to let the County deduct sleep time.

b) Timesheets clearly show that EMS employees were being interrupted during their meals and the EMS manager carefully reviews the time sheets. In spite of the fact that officials knew meals were interrupted often, nothing was done to monitor the situation and determine whether or not interruptions met the standards that would allow the deduction of meal time.

c) Uncontroverted evidence shows that compensatory time was given at a half-time rate, while it was clear under both the FLSA and the County Code that it should be awarded at time and one-half.

d) Despite continued complaints and objections from the EMS employees, it was over two years before the deduction of meal and sleep time and the use of the fluctuating workweek method were discontinued. The Personnel Director, Holmes, admitted that she knew for at least a year and a half that there were FLSA problems in the EMS department prior to the County addressing the problems.

e) With regard to the fire or police exemptions under 207(k), the Personnel Director from 1985 through 1987 herself ruled out the use of the exemption based on her review of the regulations.

■ Even if good faith could be shown by the Defendant, it is clear to the Court that the Defendant cannot show that it had reasonable grounds for believing that its conduct was in compliance with the FLSA. The actions of the Defendant were all carried out contrary to the express provisions of the statutes, regulations and interpretive bulletins on which Defendant has maintained that it relied. No opinion letter from the Department of Labor was ever requested by the Defendant. Given that the Defendant has failed to meet its burden, the Court finds that summary judgment in favor of the Plaintiff is appropriate on the issue of liquidated damages.

■ At this point, it appears to the Court that a discussion of the relationship between willfulness and the standard for mitigation of liquidated damages is worthwhile, as this Court can find no cases which deal with this issue. As noted earlier, prior to *McLaughlin*, good faith on the part of the employer was not a defense to a finding of willfulness. Under the *McLaughlin* standard, however, good faith is clearly a defense to willfulness, as good faith is necessarily inconsistent with knowing or reckless disregard. *Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 288 (D.N.J.1989). In other words, a finding of good faith on the part of the employer precludes a finding of willfulness. Likewise, whenever the issue of willfulness is resolved against the employer, the court must award liquidated damages, as "willfulness" under the *McLaughlin* standard necessarily precludes a finding of good faith. It appears, however, that an employer's conduct may be found to be not willful, yet he may be unable to meet his burden of establishing good faith and reasonable grounds so as to avoid the imposition of liquidated damages. *See, Dalheim v. KDFW–TV,* 712 F.Supp. 533 (N.D.Tex.1989). In other words, one's conduct may be lacking good faith and reasonable grounds without necessarily being with knowledge or reckless disregard. For example, it has been held that intentional violations of the FLSA are not necessary to obtain an award of liquidated damages. *Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 129 (3d Cir.1984); *Dole v. Solid Waste Services, Inc.,* 733 F.Supp. 895, 932 (E.D.Pa.1989), *aff'd,* 897 F.2d 521 (3d Cir.1990), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781. Willfulness, on the other hand, may require intentional conduct on the part of the employer. Thus, regardless of whether a jury later finds the Defendant's conduct to be willful or not willful, the Court may make a determination that liquidated damages are appropriate upon a motion for summary judgment if there is no genuine issue of material fact that the Defendant has failed to satisfy its burden under 29 U.S.C. § 260.

## VIII. DISCRIMINATION:

■ Defendant, until August of 1989, counted leave time as hours worked for purposes of calculating overtime pay for all County employees. Defendant, in its answer, urges that leave time should not be counted as hours worked when calculating any back pay awarded. Plaintiff claims that this position violates the retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3), as well as the equal protection clause of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiff seeks to enjoin the Defendant from excluding leave time from hours worked when calculating back pay.

The anti-discrimination provision of the FLSA, 29 U.S.C. § 215(a)(3) provides:

> [I]t shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter.

29 U.S.C.A. § 215(a)(3) (1965).

It appears to the Court that merely asserting a position in a pleading is not the kind of unilateral action that is contemplated in this provision. The Court can find no cases in which the assertion of a position in litigation constitutes discrimination. It further appears that the same analysis applies to Plaintiff's claims of discrimination under 42 U.S.C. § 1983.

Whether the Defendant is actually entitled to exclude leave time from hours worked when calculating back pay is another question altogether. Thus, the Plaintiff's claim of discrimination is dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Jackson's motion for partial summary judgment is GRANTED as to all issues of liability except the willfulness of Defendant's conduct and discrimination;

IT IS FURTHER ORDERED that the Defendant's motion for summary judgment is DENIED;

IT IS FURTHER ORDERED that the Plaintiff's motion to strike is DENIED;

IT IS FURTHER ORDERED that Plaintiff's discrimination claim is hereby dismissed.