**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHRISTOPHER C. BAILEY; ARMAND
BERUBE; TERRYL J. COBB; JERRY L.
FARR; MARTHA J. HUNT; JAMES R.
JACKSON; KENNETH M. JOHNSON;
DRURY L. KEESLER, JR.; LARRY M.
LEWIS; JOSEPH D. LIVINGSTON;
J. BARRY MARSH; DAVID W.
MCCONNELL; SAMUEL MOUDTRIE, JR.;
EDWARD WAYNE POPE; WALTER
ALLEN POSTON; ISAAC L. PYATT;
THOMAS L. REA; TERRI SISINNI;
GEORGE W. SMITH; WILBERT H.
THACKER, JR.; WILLIAM M.
TISDALE, JR.; GARY W. TODD; ALAN
WAYNE WALTERS; DAVID A.                                    No. 95-1923
WHEELER; WILLIE B. GRATE;
DAVID L. BARR; DARRYEL C. CARR;
LEROY GASQUE; WILLIAM MARK
MULLINS; LAWRENCE B. SMALLS;
DAVID ALTMAN, JR.; TYRUN Y.
GREENE; ANTHONY CRAIG MITCHUM;
JOSEPH E. HOWELL; FRED LYTLE;
ERNEST A. HAMPTON; WALLACE E.
DINGLE; WALLACE C. MEDLIN;
ANTHONY L. FEAGIN; URSULAR L.
ARMSTRONG; DENISE G. KING;
MATTHEW GRAYSON; WILLIAM A.
PIERCE; MICHAEL COX; KENNETH
WAYNE DAVIS;

Detective BENITO REVES; MARYBETH
MORRIS as the Personal
Representative for the Estate of
WILLIAM ROBERT MORRIS, JR.,
Plaintiffs-Appellants,

v.

COUNTY OF GEORGETOWN,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Chief District Judge.
(CA-94-928-2-2)

Argued: May 6, 1996

Decided: August 29, 1996

Before MURNAGHAN, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Williams and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Michael Kurt Kendree, LAW OFFICES OF WILLIAM
STUART DUNCAN, Georgetown, South Carolina, for Appellants.
Stephen Terry Savitz, GIGNILLIAT, SAVITZ & BETTIS, Columbia,
South Carolina, for Appellee. **ON BRIEF:** William S. Duncan, LAW
OFFICES OF WILLIAM STUART DUNCAN, Georgetown, South
Carolina, for Appellants. Linda Pearce Edwards, GIGNILLIAT,
SAVITZ & BETTIS, Columbia, South Carolina, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

I.

On July 6, 1994, Appellants--forty-seven current and former deputy sheriffs[1] for Georgetown County, South Carolina--filed an amended complaint against Georgetown County in the United States District Court for the District of South Carolina. In their complaint, Appellants alleged that the County had violated sections 6 and 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, by failing to pay them for overtime work at rates required by that statute. Appellants requested an award of all unpaid overtime wages covering the preceding three years, as well as liquidated damages, attorneys' fees, and an injunction prohibiting the County from violating the FLSA in the future. Appellants demanded and received a jury trial. The district court bifurcated the case in the manner described below.

Much of the evidence presented during the first stage of the trial concerned the "fluctuating pay plan" that the County adopted for the deputies in 1990 after the United States Department of Labor determined that overtime wages to which the deputies were entitled under the FLSA were unlawfully being withheld. Linda J. McCants, the County's payroll supervisor, explained the pay plan as follows. Each deputy sheriff is paid a specified annual salary; no additional compensation is paid unless the deputy works more than 171 hours during a given twenty-eight-day cycle. For each hour in excess of 171 hours worked by a deputy during such a cycle, the deputy receives overtime pay. The overtime rate to be paid to the deputy is determined by dividing his or her base salary for that twenty-eight-day period by the total number of hours worked, yielding an adjusted hourly rate of pay. An overtime premium of one-half of that adjusted hourly amount is then paid for each hour worked in excess of 171 hours.[2]

_____

[1] One of the appellants is the personal representative of a deceased deputy sheriff.

[2] McCants gave an example. Suppose a deputy worked 230 hours during a 28-day period. By subtracting 171 from 230, one finds that the dep-

3

The principal dispute during the first stage of the trial concerned whether the deputy sheriffs had clearly understood the manner in which their overtime pay was being calculated under the plan. The issue is potentially made significant by section 7 of the FLSA and by 29 C.F.R. § 778.114. Section 7 requires that overtime wages be paid "at a rate not less than one and one-half times the regular rate at which [an employee] is employed." 29 U.S.C.§ 207(a) (Supp. 1996). Section 778.114 describes one of the means by which a salaried employee's "regular rate" of pay may be determined.**3** That regulation states:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid to him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. <u>Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the [Fair Labor Standards] Act</u> if the amount of the salary is suffi-cient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour

_____

uty worked 59 overtime hours. Suppose his base salary for that cycle is $1,739.86. When that amount is divided by the total number of hours worked (230), one determines that the deputy's adjusted hourly rate is $7.56. One-half of that amount is $3.78. The amount of overtime pay owed to the deputy is then determined by multiplying $3.78 by the num-ber of overtime hours worked (59): $223.02. <u>See also</u> 29 C.F.R. § 778.114(b) (providing another example of a fluctuating pay plan).
**3 <u>See</u>** 29 C.F.R. § 778.109 (stating that "[t]he `regular rate' under the Act is a rate per hour" and that section 778.114 and other sections "give some examples of the proper method of determining the regular rate of pay in particular instances"). <u>See generally Overnight Motor Transp. Co. v. Missel</u>, 316 U.S. 572, 579-80 (1942) (holding that fluctuating pay plans do not violate the FLSA, even though under such plans "the longer the hours the less are the earnings per hour").

4

worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement [of section 7 of the FLSA] because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

§ 778.114(a) (emphasis added).**4** The County argued that its pay plan was of the fluctuating variety described in section 778.114. Appellants contended that they did not clearly understand the manner in which their overtime pay was calculated, that the requirements of section 778.114 had therefore not been met, and that the plan therefore violated the FLSA's requirement that overtime be paid at the rate of one and one-half their regular rate of pay.**5**

After both sides had rested, Appellants asked the district court to instruct the jury that the County was required to prove that each of them had clearly understood the manner in which his or her overtime

_____

**4** Under 29 U.S.C. § 207(k) (Supp. 1995), a public agency may pay law enforcement officers on a 28-consecutive-day basis, rather than on a weekly basis. When, as in the instant case, a 28-day plan has been adopted, the words "work period" in the regulations are substituted for the word "workweek." 29 C.F.R. § 553.233.

**5** The deputies believe that section 778.114 represents an exception to the FLSA, rather than an elaboration upon it. See Appellants' Brief at 25-26 (citing Burgess v. Catawba County, 805 F. Supp. 341, 348 (W.D.N.C. 1992) (stating that "the `fluctuating workweek' is . . . an exception to the normal requirements of the FLSA")). Appellants are mistaken. As we have indicated, section 778.114 simply provides one means by which a salaried employee's regular rate of pay may be determined.

pay was being calculated. The court refused to do so, finding that such an understanding is not required under the FLSA and section 778.114. Instead, the court told the jurors that it was their task to determine whether the County had shown, by a preponderance of the evidence, that each deputy had clearly understood (1) "that he was paid an annual salary in a certain amount, and that that annual salary was paid to him in twenty-six biweekly installments of a certain amount;" (2) "that the work year is divided into thirteen work periods of twenty-eight consecutive days each, and that no matter how many or how few hours a deputy worked during any such twenty-eight-day work period, he or she would be paid only [his or her] annual salary as straight time during that work period;" and (3) "that the deputy will be paid an overtime premium for all hours in excess of 171 worked by that particular deputy during any twenty-eight-day work period."

On March 24, 1995, the jury found that each deputy had clearly understood each of the three propositions enumerated by the district court.

In the second stage of the trial, the parties took up the question of whether the County had known that approximately twenty of the forty-seven deputies had been working hours that were not being recorded on their time sheets. If the County had had such knowledge, the deputies argued, it was required under the FLSA to compensate them for those unreported hours. After the parties presented testimony on the matter, the court entered a directed verdict in favor of the County. The court found that there was "absolutely nothing in this record, not one iota of evidence that would support knowledge on the part of the County of a consistent plan of working off-the-clock hours by the deputy sheriffs of Georgetown County during the period in question."

The deputies have appealed. They believe that the district court failed properly to instruct the jury on the issue of what they were required clearly to understand with respect to the pay plan and that the district court erred when it entered the directed verdict. Finding no merit in Appellants' contentions, we affirm.

II.

Appellants have argued that the district court erred when it refused to instruct the jury that the County was required to prove that each

6

Appellant had clearly understood that his or her hourly overtime premium was equal to one-half his or her adjusted hourly rate. Putting the matter another way, Appellants have contended that the County was required to prove that each Appellant knew that the more overtime he or she worked, the less he or she would be paid for each of those overtime hours. Appellants rely principally upon two cases: Condo v. Sysco Corp., 1 F.3d 599 (7th Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1051 (1994), and Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644 (6th Cir. 1986).

In Condo, an employer had chosen to pay an employee according to a fluctuating pay plan. 1 F.3d at 600. The employee's employment contract explained that plan, providing examples of the manner in which his rate of pay for overtime work would be calculated. Id. The issues on appeal were whether section 778.114 could be applied to the given employment contract and whether the regulation violated the FLSA. The Seventh Circuit answered the first question in the affirmative and the second question in the negative. Id . at 601-05. Before addressing those issues, though, the court stated that, under section 778.114, an employee and employer "may reach a mutual understanding [that the employee] will receive a fixed amount as straight-time pay for whatever hours he is called upon to work . .. and that he will be compensated for his overtime work at a rate of fifty percent of his regular hourly pay." Id. at 601. The court then observed that the requirements of section 778.114 had been met in the case before it because the employee and the employer "had a mutual understanding that [the employee] would be paid according to the system that is set forth in § 778.114 and the employment contract." Id. at 602. The court further noted, though, that the employee had contended at trial that he never understood how his wages were calculated; that the district court had concluded that the employee did indeed understand how his wages were calculated; and that the employee had abandoned the issue on appeal. Id. at n.4. Despite the fact that the Seventh Circuit expressly stated that the issue was not then before it, Appellants in the instant case believe that Condo stands for the proposition that, if a fluctuating pay plan is to be permitted under the regulations, an employee must understand the manner in which his or her overtime premium will be calculated.

In Highlander, the Sixth Circuit held that the district court had not clearly erred when it found that the employee in that case had under-

7

stood the manner in which her overtime compensation was being calculated. 805 F.2d at 648. The court reached that conclusion because the employee had been given a form which explained the pay system and provided examples of how that system would be applied; the employee had signed a statement acknowledging that she had received such an explanation; the employee had presented no evidence at trial indicating that she had not understood the pay plan; and the employee's testimony had been incredible. Id . at 645-48. Appellants in the instant case believe that Highlander stands for the proposition that, if an employer wishes to implement a fluctuating pay plan pursuant to section 778.114, it must obtain from its employees signed documents indicating that the employees have received an explanation of the plan. Appellants have stated that only five of them signed such acknowledgements.

"In reviewing the adequacy of the district court's choice of jury instructions, we accord the district court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." Teague v. Bakker , 35 F.3d 978, 985 (4th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1107 (1995). "The test of adequacy of instructions . . . is not one of technical accuracy in every detail[, but is instead] simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988).

We hold that the district court's instructions in the case at bar correctly and adequately articulated the applicable law. Section 778.114 clearly states that, if a fluctuating pay plan is to be used, the employer and employee must have reached "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated. Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written

8

acknowledgements indicating that the employees' pay plan has been explained to them.

We do not read the Seventh Circuit's decision in Condo or the Sixth Circuit's decision in Highlander as adopting contrary interpretations of the statutory and regulatory texts. In Condo, the Seventh Circuit made clear that the employee had abandoned the "clear mutual understanding" issue on appeal. In Highlander , the Sixth Circuit merely held that it was not clear error to conclude that the employee had clearly understood the manner in which her overtime pay was calculated. The Highlander court did not have occasion to consider what legal consequences, if any, would flow from an absence of such an understanding.

To the extent that those or other cases do suggest that employees whose employer has adopted a fluctuating pay plan must understand the manner in which their overtime pay is calculated, see, e.g., Duck v. Wallace Assoc., 438 S.E.2d 269 (S.C. App. 1993); Marshall v. Hamburg Shirt Corp., 444 F. Supp. 18 (W.D. Ark. 1977), rev'd, 577 F.2d 444 (8th Cir. 1978),**6** or that the employer must secure written acknowledgements that the pay plan had been explained to the employees, we reject their reasoning as contrary to the plain language of the FLSA and section 778.114.

III.

In order to be liable for overtime wages under the FLSA, an employer must have "knowledge, either actual or constructive, of [that] overtime work." Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986).**7** In order to recover unpaid wages for overtime hours that

_____

**6** In their brief, Appellants have cited both Duck and Marshall. Those cases are less than persuasive authorities, not only because--if read as Appellants read them--they are contrary to the plain language of the FLSA and § 778.114, but also because, in Duck, the plaintiff filed suit pursuant to state law, rather than federal law, and in Marshall, as the above citation indicates, the district court's decision was reversed by the Eighth Circuit.

**7** We reached that conclusion in Davis after examining the term "employed," as it is used in section 7(a)(1) of the FLSA. See 29 U.S.C. § 207(a)(1).

were not recorded on their time sheets, Appellants were therefore required to prove that the County knew, either actually or constructively, that they were working unrecorded overtime hours. The district court entered a directed verdict in favor of the County, having found "not one iota of evidence that would support knowledge on the part of the County of a consistent plan of working off-the-clock hours by the deputy sheriffs."

We must uphold the district court's entry of a directed verdict if, viewing the evidence in the light most favorable to the deputies, there could be only "`one reasonable conclusion as to the verdict'" under the applicable law. Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). A motion for a directed verdict may be defeated, and an issue submitted to a jury, only when that issue "is supported by substantial evidence which shows a probability and not a mere possibility of proof." Eastern Auto Distrib. v. Peugeot Motors of Am., 795 F.2d 329, 335 (4th Cir. 1986).

The deputies have argued that the district court erred when it entered a directed verdict in the County's favor. They have pointed out that McCants, the County's payroll supervisor, testified that she had been told by the sheriff's secretary in the summer of 1990 that some of the deputies were not recording all of their hours, and that, in late 1992, Deputy Terryl Cobb, then a new employee, told her that he had not reported "a couple of hours" on his time sheet. (McCants also testified that, on both occasions, she stated that the deputies should report all hours worked.) Appellants have also pointed out that Deputy Isaac Pyatt testified that he told County Councilmen Glenn Cox and Hughey Walker that deputies were not allowed to record all of the hours they worked.

The district court held that those apparently isolated incidents were not sufficient to put the County on notice that, over the three-year period in question, deputies routinely did not report all of the hours they worked. We agree. The evidence presented by the deputies falls short of the degree of proof required to enable a reasonable juror to conclude that the County knew that the deputies, as a matter of course, were not recording all of their hours during the period in question.

10

The judgment below is accordingly

<u>AFFIRMED</u>.

11