In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-3346

JAMES WALTERS, on behalf of himself and others similarly situated,

*Plaintiff-Appellee,*

*v.*

PROFESSIONAL LABOR GROUP, LLC,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02831 — **James R. Sweeney II**, *Judge.*

———————————

ARGUED SEPTEMBER 11, 2024 — DECIDED OCTOBER 30, 2024

———————————

Before SYKES, *Chief Judge*, and BRENNAN and PRYOR, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Professional Labor Group, LLC (PLG) matches its employees—many of whom are skilled tradesmen—with temporary work at client job sites. Employees travel to the remote sites where they stay and work for days or weeks before returning home or moving on to the next job. PLG does not compensate its employees for time spent

traveling to and from assignments during their normal working hours. Some of PLG's former employees, including James Walters, believe it should. The question before us is whether the Fair Labor Standards Act requires it must.

**I**

PLG is an Indiana-based staffing firm and an employer subject to the Fair Labor Standards Act (FLSA). The organization recruits and employs individuals skilled in various trade classifications, including electricians, millwrights, and the like. PLG serves its clients—mostly construction and industrial contractors—by supplementing their existing workforces with skilled labor. When a client needs assistance on a project, it places a request with PLG for employees qualified in a particular trade. PLG then identifies appropriate candidates and assigns them to the job site.

The assignments are not local. Rather, a job usually requires PLG employees to drive to the client's remote site where they remain for the duration of the project—anywhere from a few days to several weeks. PLG normally provides its employees with per diems and mileage reimbursements consistent with the IRS business travel rate. But the organization does not otherwise compensate the tradesmen for their travel time, nor does it count their travel as hours worked.

When the tradesmen arrive at a job site, the client dictates the terms of their employment. They always remain PLG employees, but the client sets their daily schedules, assigns tasks, and determines when a particular project is complete. As a result, the employees' workdays might vary from one site to the next. Once a project concludes, the tradesmen either

return home or move on to another assignment. Like travel time to a job site, return travel goes uncompensated.

James Walters, a skilled tradesman, was a PLG employee from June to October 2021. As with other PLG tradesmen, he was an hourly and nonexempt employee eligible for overtime pay under the FLSA. During his employment, Walters regularly traveled to and from remote job sites in the manner described above. Because he often did so during what he considered his normal workday, and what clients would later designate as his normal working hours, Walters believes he is entitled to compensation for his time spent traveling.

Accordingly, Walters filed suit against PLG on behalf of himself and similarly situated employees, alleging their travel time was compensable under 29 C.F.R. § 785.39 and should have counted as hours worked toward overtime. PLG disagrees, maintaining the travel time was non-compensable under the FLSA.

At the close of discovery, PLG moved for summary judgment, which the district court denied. Walters then moved for summary judgment on the issue of PLG's liability. The district court granted his motion after concluding federal law requires the organization to "treat employee travel to overnight work assignments as compensable worktime when it occurs during normal work hours." Rather than proceed to a bench trial on the issue, the parties stipulated to damages. PLG reserved the right to appeal the district court's summary judgment order. It now exercises that right.

## II

"We review de novo a district court's grant of summary judgment, viewing the facts in the light most favorable to the

non-moving party." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 852 (7th Cir. 2023) (quoting *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 668 (7th Cir. 2022)). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

The FLSA does not require an employer to compensate its employees for normal commuting to and from home. 29 C.F.R. § 785.35. That remains true whether an employee works "at a fixed location or at different job sites." *Id.* But "[t]ravel that keeps an employee away from home overnight" is different. 29 C.F.R. § 785. 39. Indeed, an employee is entitled to compensation for overnight travel when it "cuts across" his "workday." *Id.*

PLG argues Walters and the other tradesmen were engaged in normal, non-compensable commuting when they traveled to remote client sites. And it asserts 29 C.F.R. § 785.39 does not apply to its employees' overnight travel scenarios. We disagree at both turns. There is no genuine dispute as to any material fact that PLG violated the FLSA by failing to compensate its employees for their time spent traveling to overnight assignments during normal working hours. The district court was therefore right to grant summary judgment for Walters.

## A

The FLSA guarantees covered employees both a minimum wage and overtime pay. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023). As to overtime, the law requires employers to provide "time-and-a-half pay for work over 40 hours a week." *Id.* (citing 29 U.S.C. § 207). But not every hour

an employee spends on a task related to his job is compensable and counted toward overtime. An ordinary commute, for instance, is non-compensable travel time. Federal regulation provides:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

29 C.F.R. § 785.35. PLG submits that this regulation relieves it of any obligation to compensate the tradesmen for their time spent traveling to remote client sites. The travel, it argues, was normal, non-compensable commuting.

To be sure, traveling to "different job sites"—as PLG tradesmen regularly do—can constitute ordinary commuting. Yet PLG asks us to read past key language in the regulation: An ordinary commute requires an employee "to return[] to his home at the end of the workday." *Id.* Walters and the other PLG employees traveled to client sites and stayed for days or weeks at a time. Because they did not both leave and return home on the same days, their travel was not ordinary commuting. By its plain terms, 29 C.F.R. § 785.35 does not apply here.

PLG cites several cases for the proposition that normal, non-compensable commuting is defined instead "by what is usual within the confines of a particular employment relationship." *See Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274 (10th

Cir. 2006); *Imada v. City of Hercules*, 138 F.3d 1294 (9th Cir. 1998); *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994), *abrogated on other grounds*, *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 228 (5th Cir. 2017). Overnight commuting to remote clients, PLG says, is usual in the skilled tradesmen industry and thus non-compensable. Yet none of the cases PLG offers alters our conclusion. This is not because the decisions are wrong, but because each dealt with unique, non-compensable commuting arrangements where the employees nonetheless returned home at the end of their workdays. *Kavanagh*, 192 F.3d at 271 (mechanic commuted to store locations throughout New York and Connecticut but "returned home every night"); *Smith*, 462 F.3d at 1280 (drilling rig crew "commute[d] back and forth to the well site each day"); *Imada*, 138 F.3d at 1295–96 (police officers "travel[ed] to and from" an off-site training location);[1] *Vega*, 36 F.3d at 425 (field workers commuted four hours per day "to work and back" on their employer's bus). Not so with PLG's employees. Again, they spent days or weeks at job sites before returning home. The district court was therefore correct in holding that 29 C.F.R. § 785.35 does not apply to their overnight travel arrangements.

**B**

We turn next to whether federal law requires PLG to compensate its employees for their time spent traveling to remote client sites during normal working hours.

---

[1] The officers in *Imada* also requested compensation for overnight travel to off-site training sessions. 138 F.3d at 1297. The court held that the overnight travel was not compensable "unless it cut[] across the normal workday." *Id.* (citing 29 C.F.R. § 785.39). As will be seen, that holding is entirely consistent with our own. *See infra* Section II.B.

"[T]he FLSA was designed" in part to ensure covered employees "receive a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)) (cleaned up). To that end, 29 C.F.R. § 785.39 requires employers to pay their employees for certain overnight travel. That regulation says in pertinent part:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days.

29 C.F.R. § 785.39.

Reading the regulation in its entirety, a straightforward rule emerges: When an employer requires its employee to travel away from home overnight and that travel "cuts across" his workday—meaning it occurs during his "normal working hours"—he is entitled to compensation.[2] Even travel on nonworking days is compensable so long as it occurs

---

[2] The Acting Secretary of Labor, in her amicus brief, raises the argument that all time employees spend driving themselves to overnight jobs is compensable, not just travel during normal working hours. Neither party raised this issue in the district court or on appeal. We therefore decline to offer a view on the matter to avoid issuing an advisory opinion. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378–79 (2024).

during what would otherwise be considered the employee's normal working hours.

We can apply the rule to this case with little difficulty. Walters and the other PLG employees regularly traveled during their normal working hours to overnight job sites.[3] When they did, the travel cut across their workdays for purposes of 29 C.F.R. § 785.39. That remains true whether it occurred on working or nonworking days. The tradesmen are thus entitled to compensation for the qualifying travel time, and PLG should have counted it as hours worked toward overtime.

PLG raises two principal counterarguments. First, it contends travel cannot cut across employees' workdays when the employees do not begin working until they arrive at a client's job site. And second, an employer is only obligated to compensate for overnight travel when its employees substitute travel for other duties—which was not the case for Walters or the other tradesmen. Neither argument is persuasive.

According to PLG, its employees' travel did not cut across their workdays because their workdays did not begin until they arrived at a job site. PLG invokes another labor law—the

---

[3] PLG attempts to argue that its employees have no normal working hours because their hours may change from one client to the next. Yet even when an employee's hours vary across assignments, "for any given project, there would be 'normal working hours.'" *Mendez v. Radec Corp.*, 232 F.R.D. 78, 87 (W.D.N.Y. 2005) (emphasis omitted); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Apr. 12, 2018) (The Department "carefully scrutinizes claims that employees have no regular or normal working hours. In [its] experience, a review of employees' time records usually reveals work patterns sufficient to establish regular work hours."). Indeed, PLG was apparently able to agree on the average work hours for each plaintiff, as evidenced by the parties' joint damages stipulation.

Portal-to-Portal Act—to support this contention. Specifically, it relies on the Portal-to-Portal Act's definition of "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). Under that definition, "[i]f an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his 'workday' *commences at the time he reports there for work* in accordance with the employer's requirement … ." *Id.* (emphasis added). So, PLG's argument goes, its employees' workdays commenced upon reporting to their respective client sites and ended when they left. And since their travel necessarily occurred outside of that time, it could not have cut across their workdays.

But the argument lacks merit because the Portal-to-Portal Act does not apply to out-of-town, overnight travel scenarios. Rather, the Act deals with travel "in the course of an employee's ordinary daily trips between his home or lodging and the actual place where he does what he is employed to do." 29 C.F.R. § 790.7(c). Again, the PLG tradesmen were not engaged in that kind of ordinary commuting when they traveled to remote client sites.

Where the Portal-to-Portal Act does not apply, "the question whether the travel time is to be counted as worktime … will continue to be determined by principles established under" the FLSA. *Id.*; *see also id.* at n.46 (cross-referencing 29 C.F.R. § 785). As explained, travel that occurs during employees' normal working hours is compensable worktime in the context of 29 C.F.R. § 785.39. Walters and the other PLG tradesmen regularly traveled during their normal working hours, so they are entitled to compensation.

Because the Portal-to-Portal Act does not apply, we part ways with an unpublished opinion cited by the parties and the amicus curiae. *Abell v. Sky Bridge Res., LLC*, 715 F. App'x 463 (6th Cir. 2017). Much like PLG, the employer in that case, Sky Bridge, was a recruiting firm. *Id.* at 465. It deployed several of its employees (information technology consultants) to a remote client site for weeklong trips at a time. *Id.* Sky Bridge paid the consultants just half their normal rates while traveling, so the consultants filed suit, claiming the overnight travel cut across their workdays and was thus fully compensable.[4] *Id.* at 465–66, 78–79. The Sixth Circuit held that the consultants were not entitled to unpaid wages. *Id.* at 480. Invoking the Portal-to-Portal Act, it determined that the "common-sense definition of 'workday' is that period of time during which an employee performs the activities that he was hired to perform." *Id.* at 479. The court then explained the consultants' travel could not have cut across their workdays because their workdays did not begin until they arrived at the client site to perform the activities they were hired to perform. *Id.* at 480. And their workdays ended when they left. *Id.*

The Sixth Circuit's reliance on the Portal-to-Portal Act in *Abell* was misplaced. As Judge White explained in her partial dissent, courts should not look to that Act when "decid[ing] what an employee's 'workday' is for purposes of assessing

---

[4] The employees in *Abell* brought their claim under a Kentucky regulation similar to 29 C.F.R. § 785.39. 715 F. App'x at 479 (explaining that, in both regulations, travel is compensable "when [it] 'cuts across the employee's workday'") (quoting 29 C.F.R. § 785.39; 803 Ky. Admin. Regs. 1:065 § 7(4)). But because Kentucky law did not define "workday," the Sixth Circuit "turn[ed] to federal law" instead. *Id.* The court's analysis thus focused on interpreting the term as it is used in § 785.39. *Id.*

travel time under 29 C.F.R. § 785.39." *Id.* at 475 (White, J., partial dissent). Instead, courts must consider "what the employee's typical work hours were." *Id.* Said another way, determining whether travel cuts across an employee's workday turns on whether the travel occurred during normal working hours. 29 C.F.R. § 785.39.

Finally, PLG directs us to language in 29 C.F.R. § 785.39 that explains required overnight travel is compensable because the "employee is simply substituting travel for other duties." *Id.* In its view, Walters and the other tradesmen were not substituting travel for other duties. Rather, their other duties arose after arriving at their respective job sites. As a result, PLG believes it need not compensate the tradesmen for their time spent traveling.

We agree with the district court, though, that the regulation's substitution language is best understood as a rationale for the rule, not a prerequisite for receiving travel compensation. The regulation explicitly requires an employer to compensate its employees for time spent traveling during what would be their normal working hours on nonworking days. 29 C.F.R. § 785.39; *see also Troutt v. Stavola Bros., Inc.*, 905 F. Supp. 295, 301 (M.D.N.C. 1995) (time spent traveling on the weekend was still compensable when the employee normally worked weekdays). Of course, employees have no "other duties" on nonworking days. Yet they remain eligible for travel compensation. The regulation confirms this point with an example: "[I]f an employee regularly works 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is [compensable] worktime on Saturday and Sunday as well as on the other days." 29 C.F.R. § 785.39. If the regulation required strict substitution of travel for other duties, it would

defeat its own hypothetical. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180–82 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). Simply put, the regulation does not mandate that an employee substitute travel for other duties to receive compensation. Substitution is but one rationale for the regulation.

### III

Walters and the similarly situated tradesmen spent time traveling to remote client job sites during their normal working hours. That time was compensable under 29 C.F.R. § 785.39, and PLG should have counted it as hours worked for purposes of calculating overtime. The district court therefore correctly granted summary judgment to the employees.

AFFIRMED.